IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| DISABILITY RIGHTS TEXAS, | § § | |
| Plaintiff, | § § | |
| vs. | § § | CIVIL ACTION NO: 5:19-cv-01162 |
| ROBERT ARIZPE, in his official capacity as the Superintendent of San Antonio State Hospital, | § § § § | |
| Defendant. | § § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

Plaintiff Disability Rights Texas respectfully files this Original Complaint for declaratory and injunctive relief, and would show

**I.     PRELIMINARY STATEMENT**

1. In July 2019, Disability Rights Texas ("DRTx") received a report that a resident of the San Antonio State Hospital ("SASH"), a state-run mental health facility, was found dead, face down and alone, on the hospital grounds, even though the resident should not have been allowed on the grounds alone.

2. DRTx, as Texas's designated protection and advocacy system and in accordance with its statutory obligations, sought to investigate the causes of this death pursuant to the Protection and Advocacy for Individuals with Mental Illness Act ("PAIMI"), 42 U.S.C. § 10801, *et seq.;* the Developmental Disabilities Assistance and Bill of Rights Act ("PADD"), 42 U.S.C. §§ 15001, *et seq.*; and the Protection and Advocacy for Individual Rights Act ("PAIR"), 29 U.S.C. § 794e(a).  These three laws are hereafter collectively referred to as the "P&A Acts."

3. In accordance with these federal mandates, DRTx has the authority to access all records of an individual who has died for the purposes of investigating incidents of abuse or neglect if DRTx receives a complaint or has probable cause to believe the person had been subject to abuse or neglect. Accordingly, DRTx requested access to Defendant's videos and documents related to the death of the individual with disabilities who resided at SASH. Defendant, however, has refused to provide DRTx access to the video; peer review records such as administrative death review and the clinical death review; or the correspondence or reports to third parties alleging that they are confidential under the Patient Safety and Quality Information Act. Defendant has also failed or refused to timely provide medical records that it had agreed to produce and to which DRTx is entitled.

4. Plaintiff seeks declaratory and injunctive relief to prevent Defendant from failing to provide DRTx with timely access to video, peer review records, correspondence, and medical records related to the death of an individual in Defendant's care, as required by the P&A Acts, and to prohibit Defendant from denying DRTx future access to such records.

## II.     JURISDICTION

5. This action is authorized by 42 U.S.C. § 1983 to redress the deprivation, under color of law, of rights guaranteed by the P&A Acts, 42 U.S.C. § 10801, *et seq.*; 42 U.S.C. §§ 15001, *et seq.*; 29 U.S.C. § 794e(a); and 28 U.S.C. §§ 2201-02. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331.

6. This Court has authority to grant Plaintiff's claims for declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202, and Rules 57 and 65 of the Federal Rules of Civil Procedure.

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b). Defendant resides in this district, and the events and omissions complained of occurred in this district.

### III. PARTIES

8. Plaintiff Disability Rights Texas ("DRTx") is a nonprofit Texas corporation authorized by Congressional mandate to protect and advocate for the civil rights of persons with disabilities. DRTx was and is designated by the State of Texas to perform the above-referenced Congressional mandate pursuant to the PADD Act, 42 U.S.C. §§ 15001-15003, and the PAIMI Act, 42 U.S.C. §§ 10802-03. In accordance with these Acts, DRTx spends considerable time and resources investigating incidents of abuse and neglect in facilities, including state hospital facilities.

9. Defendant Robert Arizpe is the Superintendent of San Antonio State Hospital ("SASH"). The SASH is a state mental health facility that provides services, care, and treatment to individuals with disabilities in Texas. As the Superintendent of SASH, Mr. Arizpe is responsible for the administration, operation, and control of the functions, programs, polices, and affairs of SASH. Mr. Arizpe's duties also include ensuring that SASH's policies are in compliance with federal laws and regulations, including the PADD Act, the PAIMI Act, and their implementing regulations. He is being sued in his official capacity as the Superintendent of SASH. He may be served at 6711 S New Braunfels Ave, San Antonio, TX 78223.

10. Whenever Plaintiff uses the word "Defendant," it means Defendant, his agents, employees, successors and all persons acting in concert with him or at his direction.

### IV. FACTS

11. In July, 2019 DRTx received a report that N.R., a patient at SASH, died at the hospital on or about June 8, 2019. The report indicated that SASH had sent N.R. to University

Health System for a medical procedure shortly before he died. N.R. was returned to SASH on June 3, 2019. Five days later, on June 8, 2019, N.R. was dead; he was found face down and alone on the grounds of SASH, even though N.R. was not to be on the hospital grounds without staff.

12. Based on the report and on its probable cause, DRTx believed that N.R.'s death may have been the result of abuse or neglect. In accordance with its statutory mandate, DRTx thus began conducting an active investigation into his death.

13. DRTx's mandate comes from Congress's enactment of the P&A Acts after extensive congressional investigations found that existing state systems for monitoring compliance with respect to the abuse and neglect of persons with disabilities residing in institutions vary widely and are frequently inadequate to protect these individuals. To ensure that the fox was no longer guarding the henhouse, Congress mandated that each state have a "protection and advocacy system" designated to have independent access to institutions and records to detect and prevent abuse and neglect. Because the State of Texas receives federal funds under the P&A Acts, it is required to designate a system that is designed to protect and advocate the rights of individuals with disabilities, and to investigate incidents of abuse and neglect of individuals with disabilities. *See, e.g.*, 42 U.S.C. § 10801, *et seq.;* 42 U.S.C. § 15001, *et seq.* DRTx has been designated by the State of Texas to be that system.

14. The P&A Acts mandate that DRTx have access to all records of an individual who has died when it investigates incidents of abuse and neglect. 42 U.S.C. § 10805(a)(4); 42 C.F.R. §51.41(c).

15. The PAIMI Act defines the term "records" to include "reports prepared by any staff of a facility rendering care and treatment or reports prepared by an agency charged with investigating reports of incidents of abuse, neglect, and injury occurring at such facility that

4

describe incidents of abuse, neglect, and injury occurring at such facility and the steps taken to investigate such incidents, and discharge planning records." 42 U.S.C. §10806(b)(3)(A).

16. The implementing regulations to the PAIMI Act further define records to include "[i]nformation and individual records, obtained in the course of providing intake, assessment, evaluation, supportive and other services, and reports prepared or received by a member of the staff of a facility or program rendering care or treatment" and "[r]eports prepared by an agency charged with investigating abuse, neglect, or injury occurring at a facility rendering care or treatment, or by or for the facility itself…" "whether written or in another medium, draft or final, including handwritten notes, electronic files, photographs or *video* or audio tape records." 42 C.F.R. 51.41(c)(1)-(2) (emphasis added).

17. The PAIMI regulations indicate that "[a]ccess to records shall be extended promptly to all authorized agents of a P&A system," 42 C.F.R. § 51.41(a), and the PADD Act goes on to explicitly state that P&As are guaranteed access not later than 24 hours after a request in any case of the death of an individual. 42 U.S.C. § 15043(a)(2)(J)(i).

18. On July 30, 2019, DRTx, in furtherance of its investigation and pursuant to its protection and advocacy authority, requested the following records from SASH:

> a. Video surveillance, dated 6/8/19, from 12pm-6pm, all videos of the hospital's courtyard areas across from the pharmacy;
> b. doctors' orders, incident report, internal investigations, doctors' progress notes, nursing progress notes, medical history, social worker progress notes, medical consults, history/physical, autopsy, administrative and clinical death review, PNA progress notes;
> c. Any and all documents evidencing or purporting to evidence peer review, death review, clinical review, administrative review, mortality review, root cause analysis records or any other peer review committee documents, if any, regarding his death 6/8/19; and
> d. Any and all correspondence or reports to a third party, such as the Texas Department of State Health Services, the Centers for Medicare and Medicaid Services, Terrell State Hospital, JCAHO, etc., regarding his death on 6/8/19 at San Antonio State Hospital.

5

19. Video records were requested because in 2012, the State of Texas appropriated funds to install cameras in the common areas of each Texas state hospital, including SASH. These cameras at SASH record the day-to-day activity at the facility.

20. Fifteen days after DRTx made its request, SASH informed DRTx that it would **not** provide **any** of the records requested because all of the records are considered patient safety work product ("PSWP").

21. That same day, August 15, 2019, DRTx notified the attorneys representing SASH that SASH was wrongfully denying DRTx access to records.

22. On August 16, 2019, SASH's attorney indicated that although SASH believed some of the requested records were PSWP protected by the Patient Safety and Quality Information Act ("PSQIA"), it agreed that all medical and mental health treatment records could be disclosed to DRTx and should be provided to DRTx without delay.

23. More than thirty days after the original request for records, SASH still had not indicated whether it would provide DRTx with the requested video records, peer review records such as the administrative death review or the clinical death review, or the correspondence or reports to third parties. SASH and its attorneys had also failed to provide all of the medical and mental health treatment records it vowed to provide without delay.

24. On September 3, 2019, DRTx informed SASH's attorneys that SASH had not provided all the treatment records DRTx had requested. The only records SASH provided were lab results, a psychiatric evaluation, a physical exam, a social assessment, and medical consults. The medical and mental health treatment records SASH failed to provide included the following records from June 3, 2019 to the date of N.R.'s death: doctors' orders, doctors' progress notes, nursing progress notes, social worker progress notes, and the psychiatric nursing assistance (PNA)

progress notes. SASH additionally failed to provide the incident report and the autopsy report. SASH also failed to state whether it would provide any of the other records DRTx had requested and to which it is entitled.

25. In the same email, DRTx provided SASH with references to the PSQIA clarifying that video records, administrative death reviews, and clinical death reviews are not considered PSWP product. The U.S. Department of Health and Human Services has explained that the PSQIA was not intended to prevent P&As from accessing information to which it is otherwise entitled. 73 Fed. Reg. 70,732, 70,742 – 743 (2008) ("Information is not patient safety work product if it is collected to comply with external obligations such as: state incident reporting requirements… or provision of access to records by the Protection and Advocacy organizations as required by law.").

26. Additionally, the PSQIA specifically excludes the information DRTx requested from being categorized as PSWP. PSWP does not include information such as "a patient's medical record, billing and discharge information, or any other original patient or provider records." 42 U.S.C. § 299b-21(7)(B)(i); 42 C.F.R. § 3.20. Nor is "information that is collected, maintained, or developed separately, or exists separately, from a patient safety evaluation system" considered PSWP. "Such separate information or a copy thereof reported to a patient safety organization shall not by reason of its reporting be considered patient safety work product." 42 U.S.C. § 299b-21(7)(B)(ii); 42 C.F.R. § 3.20.

27. DRTx concluded the September 3, 2019 correspondence by asking that SASH attorneys immediately provide the remainder of the requested records.

28. On September 9, 2019, SASH agreed to provide the remainder of the medical and mental health treatment records; yet, as of the filing of this Complaint, DRTx has still not received these records. SASH also stated that it failed to conduct and would not conduct an

administrative death review or a clinical death review despite being required to do so by 25 Texas Administrative Code §§ 405.269 and 25 Texas Administrative Code §405.271.

29. SASH also continued to refuse to provide the requested video records, peer review records, and correspondence or reports to third parties, again alleging that they are " Patient Safety Work Product (PSWP) developed within the Patient Safety Evaluation System (PSES) and protected from disclosure under the Patient Safety and Quality Improvement Act of 2005, 42 U.S.C.A. §299b-22, Privilege and confidentiality protections."

30. The use of the PSQIA to prohibit access to the video, correspondence, and peer review materials is unlawful. None of the requested records fall under the records protected by the PSQIA, and such records were not intended to be withheld from a P&A because of the PSQIA.

31. As a result of SASH's denial of the video records, peer review records, and correspondence or reports to third parties, and failure to timely provide all of the requested medical and mental health treatment records, DRTx is unable to complete its statutorily-authorized investigation into abuse or neglect in connection with N.R.'s death, or fulfill its mandate to protect individuals with mental illness.

32. Defendant's actions unduly restrict DRTx from obtaining information and documents it is entitled to receive under federal law, and impair, limit, and impede DRTx's ability to timely conduct statutorily-authorized investigations regarding abuse and/or neglect involving individuals with disabilities receiving care and/or treatment at the Defendant's facility.

**V. CAUSE OF ACTION—VIOLATION OF THE PADD AND PAIMI ACTS**

33. Plaintiff DRTx restates each and every allegation contained in Paragraphs 1 through 32 as though fully set forth herein.

34. The Civil Rights Act of 1871, 42 U.S.C. § 1983, provides relief for persons who, under color of state law, have been deprived of any rights, privileges or immunities secured under the U.S. Constitution or federal law.

35. The PADD and PAIMI Acts authorize Plaintiff DRTx to conduct abuse and neglect investigations and to otherwise perform its statutory mandate to protect individuals with developmental disabilities and mental illness from abuse and neglect.

36. The PADD and PAIMI Acts provide DRTx with the right to access confidential records and reports of individuals with disabilities in order to perform its advocacy and investigatory role. 42 U.S.C. § 10805(a)(1); 42 U.S.C. § 15043(a)(2).

37. Records requested by DRTx must be provided promptly and, in the case of a death, no later than 24 hours after the request. 42 C.F.R. § 51.41(a); 42 U.S.C. § 15043(a)(2)(J)(i).

38. The P&A Acts specify that DRTx is authorized to have access to "information and individual records, obtained in the course of providing intake, assessment, evaluation, supportive and other services, and reports prepared or received by a member of the staff of a facility or program rendering care or treatment" and "[r]eports prepared by an agency charged with investigating abuse, neglect, or injury occurring at a facility rendering care or treatment, or by or for the facility itself…" "whether written or in another medium, draft or final, including handwritten notes, electronic files, photographs or video or audio tape records." 42 C.F.R. 51.41(c)(1) – (2); *see also* 42 U.S.C. § 10806(b)(3)(A);.

39. The medical and mental health treatment records, peer review records, correspondence or reports to third parties, and the video records requested by DRTx fall within the broad description of records covered by the P&A Acts, and without these records DRTx will be unable to complete a thorough investigation into the death of N.R.

9

40. Defendant has failed or refused, and continues to fail or refuse, to make medical and mental health treatment records, peer review records, correspondence or reports to third parties, and the video records pertaining to N.R. available to DRTx.

41. The policy and actions of the Defendant, acting under color of law, violate the right of Plaintiff, as guaranteed by the PADD and PAIMI Acts, to meaningful and timely access to records of N.R., an individual who died at the facility operated by Defendant. Defendant's policy and actions, unless enjoined, will violate DRTx's right to that information in N.R.'s death and in the event of future deaths at SASH.

## VI. PRAYER

WHEREFORE, Plaintiff prays that this Court:

(A) Enter a permanent injunction enjoining the Defendant, its agents, or employees from denying DRTx immediate access to any medical and mental health treatment records, peer review records, correspondence or reports to third parties, and the video records, pertaining to N.R.;

(B) Issue a permanent injunction against Defendant and his successors to prevent Defendant and his successors from engaging in the conduct complained of herein regarding all future records requests by Plaintiff DRTx for production of medical and mental health treatment records, peer review records, correspondence or reports to third parties, and video records of individuals residing at Defendant's facility;

(C) Issue a declaratory judgment to Plaintiff declaring that the Defendant's refusal to provide DRTx with medical and mental health treatment records, peer review records, correspondence or reports to third parties, and video records of individuals who reside in Defendant's facility violates the PAIMI and the PADD Acts;

(D) Award reasonable attorneys' fees and costs to Plaintiff DRTx pursuant to 42 U.S.C. § 1988; and

(E) Award Plaintiff any other relief that the Court deems just and equitable.

Respectfully submitted,

BETH MITCHELL
State Bar No. 00784613
bmitchell@drtx.org

LISA SNEAD
State Bar No. 24062204
lsnead@drtx.org

DISABILITY RIGHTS TEXAS
2222 W. Braker Lane
Austin, Texas 78758
(512) 454-4816 (Phone)
(512) 454-3999 (Fax)

ATTORNEYS FOR PLAINTIFF