DocuSign Envelope ID: F8A74E60-7F32-4DD2-8BC9-58F18518652A

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| DISABILITY RIGHTS TEXAS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO: 5:19-cv-01162-XR |
| | § | |
| ROBERT ARIZPE, in his official capacity | § | |
| as the Superintendent of San Antonio | § | |
| State Hospital, | § | |
| | § | |
| Defendant. | § | |

**SETTLEMENT AGREEMENT**

This Settlement Agreement sets forth the full and final terms by which Defendant Robert Arizpe, in his official capacity as the Superintendent of San Antonio State Hospital ("SASH"); Texas Health and Human Services Commission ("HHSC"), as the entity responsible for administering and overseeing SASH; and Plaintiff Disability Rights Texas ("DRTx") (collectively, the "Parties") have settled and resolved all claims that have been raised in the above-captioned lawsuit ("Litigation").

The Parties to the Settlement acknowledge that federal law and regulations will govern any future action under this Agreement.

1.  INTRODUCTION AND HISTORY OF LITIGATION

1.1   On September 25, 2019, DRTx filed an Original Complaint in this Court against Defendant in his official capacity, alleging violations of the Protection and Advocacy for Individuals with Mental Illness Act ("PAIMI"), 42 U.S.C. §§ 10801, *et seq.*; The Developmental Disabilities Assistance and Bill of Rights Act ("PADD"), 42 U.S.C. §§ 15001, *et seq.*; and the Protection and Advocacy for Individual Rights Act ("PAIR"), 29 U.S.C. § 794e. These three laws are collectively referred to as the "P&A Acts."

1.2   Specifically, Plaintiff's Original Complaint set forth the history concerning DRTx's investigation into the death of N.R., a person with mental illness and physical disabilities who died at SASH in June 2019. DRTx investigated N.R.'s death pursuant to its federal mandate to investigate abuse and neglect of persons with disabilities when those incidents are reported to DRTx or DRTx staff have probable cause to believe they may have occurred. In the course of its investigation, DRTx staff requested records from SASH, including video surveillance; N.R.'s medical records; peer review, clinical death review, administrative death review, mortality review, and root cause analysis documents; and reports and correspondence with third parties about N.R.'s death.

EXHIBIT A

Texas HHSC responded to DRTx's request on behalf of Defendant and initially refused to provide the requested records, asserting the requested records were the types of records that are protected under the PSQIA, 42 U.S.C. §§ 299b-21, *et seq*.

1.3     DRTx subsequently filed this suit pursuant to 42 U.S.C. § 1983, alleging violations of its federal right to access the requested records under the P&A Acts. DRTx prayed for declaratory and injunctive relief, reasonable attorneys' fees and costs, and any other relief the Court determined to be just and equitable. DRTx specifically prayed for future injunctive relief based on HHSC's statements that certain kinds of records were outside of DRTx's reach under the PSQIA, thereby limiting the records DRTx would be given access to in future investigations and for future clients at SASH and all other state hospitals.

1.4     Since the filing of the Original Complaint, the Parties to the Settlement engaged in limited discovery and then agreed to mediation.  The Parties to the Settlement attended a half-day mediation with Senior Judge Stephen Yelenosky on October 1, 2020. Following mediation, the Parties to the Settlement have continued to negotiate settlement, including meeting eleven times, culminating in this Settlement Agreement.

2.  DEFINITIONS AND TERMS

As used within this Settlement Agreement, these terms shall have the following meanings:

2.1     **Agreement**. "Agreement" means this settlement agreement and all exhibits attached to it.

2.2     **Court**. "Court" means the Court having jurisdiction over this Litigation, at any stage (presently the United States District Court for the Western District of Texas).

2.3     **Days**. "Days" means calendar days unless otherwise stated.

2.4     **Defendant**. Defendant means Robert Arizpe, in his official capacity as the Superintendent of San Antonio State Hospital.

2.5     **Disability Rights Texas and DRTx.** "Disability Rights Texas" and "DRTx" mean the federally designated protection and advocacy system established in Texas under the Protection and Advocacy for Individuals with Mental Illness Act, 42 U.S.C. § 10801 *et seq*.; the Protection and Advocacy for Individuals with Developmental Disabilities Act, 42 U.S.C. § 15041 *et seq*.; and the Rehabilitation Act, 29 U.S.C. § 794e.

2.6     **Parties to the Settlement**. "Parties to the Settlement" means, collectively, DRTx, Defendant Arizpe, and HHSC.

2.7     **Protection & Advocacy Acts and P&A Acts.** "Protection and Advocacy Acts" and "P&A Acts" mean the Protection and Advocacy for Individuals with Mental Illness Act, 42 U.S.C. § 10801 *et seq*.; the Protection and Advocacy for Individuals with

EXHIBIT A

Developmental Disabilities Act, 42 U.S.C. § 15041 *et seq.*; and the Protection and Advocacy for Individual Rights Act ("PAIR"), 29 U.S.C. § 794e, collectively.

2.8 **Patient Safety Quality Improvement Act and PSQIA**. "Patient Safety Quality Improvement Act" and "PSQIA" mean the Act set forth in 42 U.S.C. § 299b-21 through 299b-26.

2.9 **Patient Safety Organization and PSO**. "Patient Safety Organization" and "PSO" mean a private or public entity or component thereof that is certified and listed pursuant to 42 U.S.C. § 299b-24 and is designated by HHSC as the PSO for the State Hospitals. The Texas A&M Rural and Community Health Institute ("ARCHI") is currently designated as HHSC's PSO.

2.10 **State Hospital**. "State Hospital" means a hospital operated by Texas Health & Human Services Commission to provide inpatient care and treatment for persons with mental illness and specifically includes but is not limited to Austin State Hospital, Big Spring State Hospital, Kerrville State Hospital, North Texas State Hospital (both campuses), Rusk State Hospital, San Antonio State Hospital, Terrell State Hospital, the Rio Grande State Center, El Paso Psychiatric Center, and Waco Center for Youth.

2.11 **State Office**. "State Office" means the Texas Health & Human Services Commission staff responsible for review and release of records and other duties set forth under this Agreement.

2.12 **Texas Health & Human Services Commission and HHSC**. "Texas Health & Human Services Commission" and "HHSC" mean the division of Texas Health & Human Services responsible for the operation and administration of mental health services in the State of Texas, including but not limited to the administration and oversight of the State Hospitals.

## 3. DRTX'S ACCESS TO STATE HOSPITAL RECORDS

3.1 For all future requests for records from a state hospital, DRTx staff will use the form attached to this Agreement and marked as Attachment A. Attachment A is incorporated into the Settlement Agreement by reference as if fully stated herein.

3.2 The different types of information identified under Section C of Attachment A are records to which DRTx is entitled access when investigating or otherwise acting as the P&A and shall be provided to DRTx within 20 days of State Hospital staff's receipt of the completed form. The Parties to the Settlement agree these records cannot be withheld from DRTx on the basis that they constitute Patient-Safety Work Product ("PSWP").

      3.2.1 The Parties to the Settlement agree that, if DRTx determines the requested records are time-sensitive, that DRTx can request, on a case-by-case and

EXHIBIT A

non-routine basis, that State Hospital staff provide the requested records within three business days of receipt of the request. Where DRTx exercises the option to make a time-sensitive request, State Hospital staff shall take, in good faith, all reasonable steps to provide the requested records within three business days. To the extent State Hospital staff cannot reasonably provide the records within that time frame, they shall notify DRTx of that and suggest a revised deadline for providing records that shall be reasonably prompt. The parties agree to negotiate any revised deadlines in good faith. If the State Hospital has multiple requests that cannot all be fulfilled within the three-day timeframe, the State Hospital will ask DRTx to designate the highest to lowest priority for requests to be fulfilled. If this becomes untenable the parties will re-evaluate this provision by agreement.

3.3     If what information is requested is unclear to the State Hospital, the State Hospital's representative may ask DRTx to clarify the request. If a large amount of information has been requested, the State Hospital representative may discuss with DRTx how the scope of the request might be narrowed or prioritized but may not inquire as to the purpose for which the information will be used. The time to meet the applicable deadline will be tolled, day by day, after the request for clarification is issued and until DRTx provides a written reply to the request for clarification. If DRTx does not provide a written response to the request for clarification within 60 days of such request, the DRTx request for information will be considered to be withdrawn.

3.4     Each State Hospital shall maintain a log of requests made by DRTx which will include, but is not limited to, the date the request was received, a brief summary of the request, the status of the State Hospital's response, and the date on which the request was fulfilled. The State Hospital shall provide DRTx with access to a log with the most current information each week or no later than the next business day following any due date which falls on a holiday.

3.5     When DRTx requests a Root Cause Analysis ("RCA") in Section D of Attachment A, State Hospital staff shall promptly (within two business days) forward the request to HHSC State Office for review and response as follows:

3.5.1     If more than 60 days have passed since the discovery of the incident and the subject of the RCA and the initial RCA report was not reported to the PSO, State Office will authorize release of the RCA to DRTx. State Office or State Hospital staff will provide the records within 20 days of State Office's receipt of DRTx's request.

3.5.2     If the RCA has been sent to the PSO, State Office will communicate this fact to DRTx within 20 days of State Office's receipt of DRTx's request and will not provide a copy of the RCA.

3.5.3     If fewer than 60 days have passed since the incident the subject of the RCA and State Office has not made the determination of whether to send the RCA

EXHIBIT A

to the PSO, State Office will communicate this fact to DRTx within 20 days of State Office's receipt of DRTx's request. Following the expiration of 60 days, State Office will either provide the RCA pursuant to paragraph 3.5.1 or will not provide the documents, pursuant to 3.5.2.

3.6     When DRTx requests access to a Death Review in Section D of Attachment A, State Hospital staff shall promptly (within two business days) forward the request to HHSC State Office for review and release as follows:

    3.6.1     If DRTx requests a Death Review, the Death Review shall be treated the same as an RCA and paragraph 3.5 shall govern DRTx's request.

    3.6.2     By February 15, 2022 HHSC will send a rule packet to the Texas Register modifying the Texas Administrative Code requirements for State Hospitals to conduct death reviews (currently found in 25 Texas Administrative Code Chapter 405, Subchapter K). If HHSC meets this deadline, during the time the rules are pending for adoption in the Texas Register, a request for a Death Review shall be treated the same as a request for an RCA and paragraph 3.5 shall govern DRTx's request.

    3.6.3     After February 15, 2022, if HHSC has not sent a rule packet to the Texas Register to modify the Texas Administrative Code requirements for State Hospitals to conduct death reviews, if DRTx requests a Death Review, then DRTx shall be provided the requested records within 20 days of State Office's receipt of the request.

    3.6.4     If the requirements for State Hospitals to conduct death reviews are not removed from the Texas Administrative Code and DRTx requests a Death Review, then DRTx shall be provided the requested records within 20 days of State Office's receipt of DRTx's request.

    3.6.5     If the requirements for State Hospitals to conduct death reviews are removed from the Texas Administrative Code, Death Reviews will no longer be released to DRTx.

3.7     Records provided to DRTx under this Agreement shall be full, unredacted, and exact copies of the records as they appear in the State Hospital records keeping system, except that State Office and/or Hospital staff can redact private personal information such as social security numbers, home addresses, medical or disability information, and personal financial decisions from records responsive to DRTx requests for personnel files.

3.8     The Parties to the Settlement agree that for all records provided to DRTx, DRTx will maintain the confidentiality of the records to the same extent as required by state and federal law.  When providing records to DRTx, State Office and/or State Hospital staff will clearly mark which records are considered confidential by state or federal law.

EXHIBIT A

3.9    The Parties to the Settlement agree that the form attached here as Attachment A and incorporated herein by reference shall not be changed, except by agreement of Texas HHSC and DRTx.

4.   CONTINUING JURISDICTION AND ENFORCEMENT

4.1    This Agreement shall be construed and governed according to the federal and state law or regulations governing patient safety activity and the Protection and Advocacy Acts. The Parties to the Settlement agree that if federal or state law or regulations change regarding patient safety activity or the Protection and Advocacy Acts and they affect any part of this Agreement, the Parties to the Settlement will comply with the current law or regulations.

4.2    Each Party to the Settlement hereby releases the other, its current and former officials, employees, agents, and representatives, from any and all liability and causes of action that have arisen or may arise out of the dispute and litigation described herein, including the Complaint and Answer and Affirmative Defenses in Case No. 5:19-cv-01162-XR.

4.3    The Parties agree to submit a joint motion to the Court to enter this Agreement, with a request that, following a hearing if the Court deems it appropriate, the Court dismiss the Lawsuit pursuant to Fed. R. Civ. P. 41(a)(2) but retain jurisdiction to enforce the Agreement according to the terms set forth herein.

5.   COMPLIANCE DISPUTES ARISING UNDER THIS AGREEMENT

5.1    If DRTx believes that HHSC has failed to fulfill any obligation under this Agreement, the Parties to the Settlement agree that the process contained in Section 5 constitutes the exclusive means for resolution of any dispute related to any such claim of noncompliance.

5.2    DRTx will give written notice to HHSC that sets forth with specificity the details of the alleged noncompliance, including the specific provisions of this Agreement concerning which the noncompliance is asserted and the reasons for the alleged noncompliance. HHSC will have 30 days from the date of such written notice to respond in writing by denying noncompliance or by proposing steps that it will take, and by when, to cure the alleged noncompliance.

5.3    If HHSC fails to respond within 30 days or denies noncompliance, DRTx may file a motion with the Court seeking specific performance regarding the alleged noncompliance, or, if DRTx has already obtained an order for specific performance regarding the same alleged noncompliance, DRTx may file a motion to ensure compliance with the provisions of the Agreement addressed in the order for specific performance. DRTx will not initiate any such compliance motion without first having obtained an order for specific performance referenced herein and having given HHSC at least seven business days' notice of the intent to initiate such motion.

EXHIBIT A

5.4     If HHSC timely responds within 30 days by proposing curative action by a specified deadline, DRTx may accept HHSC's proposal or offer a counterproposal for a different curative action or deadline. The Parties to the Settlement will confer in good faith to resolve any outstanding differences regarding the proposed curative action, but a Party to the Settlement may seek an order for specific performance 30 days after the date of HHSC's curative action proposal if the Parties to the Settlement fail to reach agreement on a plan for curative action. In any action brought under this section, the party filing the action will have the burden of proof.

5.5     Failure by a Party to the Settlement to enforce any provision of this Agreement will not be construed as a waiver of the party's right to enforce other provisions of the Agreement.

6.  DISMISSAL OF CLAIMS

6.1     Within 45 days of the effective date of this Agreement, Defendant Arizpe and Plaintiff DRTx will file with the Court the joint motion referenced in Section 4.3.

7.  ATTORNEYS' FEES, COSTS, AND EXPENSES

7.1     Each Party shall bear its own costs and attorneys' fees associated with the litigation and settlement of this action.

8.SEVERABILITY

8.1     To the extent that any provision of this Settlement Agreement is held to be invalid or unenforceable, such provision will be severed from the remainder of the Settlement Agreement and the Settlement Agreement will be construed as if the invalid or unenforceable provision did not exist.

9.  MODIFICATION

9.1     This Agreement will not be modified, amended, or supplemented except by a writing executed by counsel for DRTx and Texas HHSC, or by an order of the Court.

EXHIBIT A

## 10. BINDING

10.1 This Agreement is final and binding on the Parties to the Settlement, including all agents, administrators, representatives, successors, and assigns. Each Party to the Settlement has a duty to so inform any such principal, agent, administrator, representative, successor, or assign.

## 11. EXECUTION OF AGREEMENT

11.1 Counsel for Defendant and Texas HHSC have been fully authorized by their client to enter into and execute this Agreement, under the terms and conditions contained herein.

SIGNED on the dates indicated below:


DocuSigned by:

*Beth Mitchell*

7B4AFAB9F04A4CF...

**BETH MITCHELL**
Disability Rights Texas Litigation Attorney

February 22, 2022 | 12:54 PM CST
_____
**Date**


DocuSigned by:

*Lisa Snead*

088B749DDB1F4C7...

**LISA SNEAD**
Disability Rights Texas Litigation Attorney

February 22, 2022 | 1:13 PM CST
_____
**Date**


Robert Arizpe
_____
**ROBERT ARIZPE**
Superintendent
San Antonio State Hospital
Texas Health & Human Services Commission

02/14/2022
_____
**Date**


_____
**SCOTT SCHALCHLIN**
Deputy Executive Commissioner
Health & Specialty Care System
Texas Health & Human Services Commission

1/28/22
_____
**Date**


EXHIBIT A

*Continuation of Disability Rights Texas & HHSC Settlement Agreement*

**Karen Ray** Digitally signed by Karen Ray
Date: 2022.02.22 09:28:00
-06'00'

2/22/22

**KAREN RAY**
Chief Counsel
Texas Health & Human Services Commission

**Date**

**Kimberly Gdula** Digitally signed by Kimberly Gdula
Date: 2022.02.22 09:45:48 -06'00'

2/22/22

**KIM GDULA**
Assistant Attorney General
Texas Office of the Attorney General

**Date**

EXHIBIT A

*Continuation of Disability Rights Texas & HHSC Settlement Agreement*

DocuSigned by:

*Mary Faithfull*

E1DE34155FEB43E...

**MARY FAITHFULL**
Executive Director Disability Rights Texas

February 23, 2022 | 8:34 AM PST

**Date**

EXHIBIT A